# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 08-066 (RWR)** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL J. MATHERON** | : | |
| | : | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## SENTENCING MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Defendant's Sentencing Memorandum.

## I.    BACKGROUND

The defendant was charged in a one-count information with Possession of Material Involving Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5) and 2256. On May 23, 2008, the defendant pled guilty to the information. Sentencing is scheduled for September 3, 2008. On August 25, 2008, the government filed its sentencing memorandum. Later that same day, the defendant filed a sentencing memorandum with over one hundred pages of attachments. The government addressed some of defendant's arguments in its initial sentencing memorandum, and at sentencing will address each of the arguments raised by the defendant. However, some of the defendant's assertions justify a written response, namely: 1) his reliance on United States v. Kimbrough, 128 S. Ct. 558 (2007), 2) his attachment of and reliance on a forty page "analysis" written by an assistant federal public defender in Missouri, which allegedly traces the legislative history of the amendments to the child pornography Guidelines and asserts that these Guidelines are the result of congressional directives that were motivated by politics, and not grounded in experience

1

and study.  Def.'s Sent. Mem., Attachment B ("the Stabenow article" or "the Article"),[1] and

3)  defendant's assertion that his lack of criminal history justifies a non-Guideline sentence.

II.    **ARGUMENT**

      1.    The Logic Of Kimbrough Should Not Be Extended To The Child Pornography Context

The defendant argues that the Court should not defer to the Sentencing Guidelines range

contained in the Presentence Report because, like the Sentencing Guidelines for crack cocaine at

issue in Kimbrough v. United States, 128 S. Ct. 558 (2007), the Sentencing Guidelines for child

pornography "was not developed under the empirical approach, but rather was created by way of

Congressional directives and responses to increases in statutory mandatory minimum sentences."

Def.'s Sent. Mem. at 5.  For the reasons set forth below, the Court should reject these arguments and

sentence the defendant to a Guidelines sentence.

As an initial matter, the defendant argues that the Court should give little heed to the child

pornography Guidelines for policy reasons similar to those articulated in Kimbrough v. United

States, 128 S. Ct. 558 (2007).  Kimbrough, however, is inapplicable to this case and offers no

support for the defendant's argument.

In Kimbrough, the Supreme Court was faced with a district court's decision to vary from

application of the 100:1 crack/cocaine ratio that existed in the then-applicable version of the

Guidelines.  The Court explained that in the current advisory Guidelines regime, a sentencing court's

decision to vary from the Guidelines "attract[s] greatest respect" when the judge finds that the facts

of the case falls "'outside the heartland to which the Commission intends individual Guidelines to

_____

    [1]  Troy Stabenow, "Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines."

apply.'" <u>Kimbrough</u>, 128 S. Ct. at 575 (quoting <u>United States v. Rita</u>, 127 S. Ct. 2456, 2465 (2007) (internal quotation omitted)). Conversely, the Court stated that "closer review may be in order" when the judge varies from the Guidelines range in "mine-run case[s]" based solely on a policy disagreement with the Guidelines. <u>Id</u>. Given the tortured history of the 100:1 crack/cocaine ratio in the Guidelines, however, which included the Commission's disassociation from it, and the Commission's repeated efforts to change it, the Court determined that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/[cocaine] disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." <u>Id</u>.

The defendant appears to rely on the Supreme Court's conclusion that the crack/cocaine ratio "did not take account of 'empirical data and national experience.'" <u>Kimbrough</u>, 128 S. Ct. at 575 (quoting <u>United States v. Pruitt</u>, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). Based on this language, he argues that § 2G2.2, which he deems equally unmoored from independent research and analysis, is entitled to no deference. His argument is unpersuasive.

The Guideline at issue here bears no resemblance to the crack/cocaine Guidelines discussed in <u>Kimbrough</u>. Whereas the Supreme Court pointed out the Sentencing Commission's long history of dissatisfaction with the 100:1 crack/cocaine ratio in the Guidelines, <u>Kimbrough</u>, 128 S. Ct. at 566-69, the defendant has pointed to nothing showing similar dissatisfaction with § 2G2.2. Although the Stabenow article highlights certain commentary by the Sentencing Commission questioning the congressional directives calling for increases to the child pornography Guidelines, (<u>see</u> Stabenow article at 7), the Article does not point to any findings by the Sentencing Commission that the child pornography Guidelines are overstated, or any attempts by the Commission to convince

Congress to reduce or change the child pornography Guidelines.  In contrast, the Supreme Court noted in Kimbrough that the Sentencing Commission specifically concluded that the 100:1 crack/cocaine ratio significantly overstated the differences between the two forms of the drug, and that the Commission had made repeated attempts over the course of several years to urge Congress to repeal or reduce the 100:1 crack/cocaine ratio. 128 S. Ct. at 568-69.

The defendant is correct that the respective base offense level under § 2G2.2 is now higher than in the original edition of the Guidelines, but the Commission has explained that such increases are consistent with the increased penalties for child pornography offenses that have resulted from the passage of statute.  U.S.S.G., app. C, amend. 664.  The defendant, citing the Stabenow article, decries these changes as "the product of Congressional directives to the Sentencing Commission." Def.'s Sent. Mem. at 4.  Nevertheless, it is undisputed that Congress has the power to increase penalties for criminal offenses and that the Sentencing Commission is authorized to increase the Guidelines to reflect these amended statutory ranges.  See 28 U.S.C. § 994(b)(1) (directing Commission to "establish a sentencing range that is consistent with all pertinent provisions of title 18, United States Code"); § 994(o) (directing Commission to review and revise the Guidelines based on new information).  See generally Mistretta v. United States, 488 U.S. 361, 393-94 (1989) ("[T]he Commission is fully accountable to Congress."); United States v. Huerta, 878 F.2d 89, 93 (2d Cir. 2006); United States v. MacEwan, 445 F.3d 237, 252 (3d Cir. 2006) ("It is the Congress that has the power to define a crime and set its punishment.").

Such increases in the statutory range for child pornography offenses are consistent with Congress's attempt to "restore the government's ability to prosecute child pornography offenses successfully," United States v. MacEwan, 445 F.3d 237, 249 n.12 (3d Cir. 2006) (quoting S. Rep.

No. 108-2, at 1 (2003)), by "ensuring that the criminal prohibitions against child pornography remain enforceable and effective." PROTECT Act, Pub. L. No. 108-21, § 501, 117 Stat. 650, 676 (2003), codified at 18 U.S.C. § 2251 note. As the Supreme Court recently explained, "Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." United States v. Williams, 128 S. Ct. 1830, 1846 (2008). Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Guidelines were first promulgated. See S. Rep. No. 108-2.

Indeed, despite the "pernicious evil" of the crime, Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences, see H. Rep. No. 108-66; S. Rep. No. 104-358, especially in light of the "continuing harm" caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and child pornographers." See Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note; MacEwan, 445 F.3d at 250; United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998) ("[T]he 'victimization' of the children involved does not end when the pornographer's camera is put away."). Faced with this intractable problem, it was reasonable for Congress, and the Commission, to increase the punishment for child pornography offenses. See United States v. Pugh, 515 F.3d 1179 (11th Cir. 2008), United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), see also United States v. Goff, 501 F.3d 250, 258 n.13 (3d Cir. 2007) ("There is ample evidence of Congress's intent that offenses involving child pornography be treated severely."). Despite the defendant's arguments to the contrary, the

5

Sentencing Commission should not be forced to adhere to the insufficient sentences provided for child pornography offenses when the Guidelines were enacted over twenty years ago - during a time when the Internet arguably did not even exist (at least in its current and omnipresent state). Defendant makes no mention of the incontrovertible fact that the Internet has made child pornography much more readily available than it was when the Guidelines were first promulgated. As the problem of child pornography becomes more widespread, it is certainly within the purview of Congress to take stronger measures to seek to deter others from involving themselves in it.

Based on this history, the Court should not adopt the position advocated by the defendant that the child pornography Guidelines are so disproportionate that as a general matter they produce sentences that are "'greater than necessary' to achieve § 3553(a)'s purpose, even in a mine-run case." Kimbrough, 128 S. Ct. at 575.

2.    The Court Should Not Rely on the Stabenow Article

In arguing that the child pornography Guidelines are disproportionate and should be given little deference by the Court, the defendant relies heavily on the legislative history analysis of these Guidelines contained in the Stabenow article. The Stabenow article's basic conclusion is that the child pornography Guidelines are the product of congressional directives, which he calls "morality earmarks," that were not grounded in experience or expertise. Stabenow article at 3. However, Stabenow omits evidence showing that the increases in these Guidelines *were*, in fact, the result of consideration of data and expert opinion. Because of these and other misstatements, the Court should not rely upon the article's conclusions and assertions when determining the appropriate

sentence in this case.[2]

The government will not waste the Court's time by "deconstructing" the entire Stabenow article. However, in support its assertion that the article cannot and should not be relieved upon by this Court, the government provides the following sample of unreliable information found in the Stabenow article.[3]

The Stabenow article begins with the bold statement that a comparison of the "typical" sentence imposed on child pornography defendants in 1995 and 2007 revealed a 300% increase in the length of sentence imposed. Stabenow article at 2-3. This statement is inaccurate. The statistics Stabenow relied upon to come to this conclusion included the sentences for both pornography *and* prostitution offenses. Stabenow offers no statistic which provides the 2007 sentences for only pornography offenses.

Furthermore, the Stabenow article highlights the passage of Amendment No. 780 to the Treasury, Postal Service, Executive Office of the President, and Independent Agencies Appropriations, Fiscal Year 1992, an amendment sponsored by Senator Jesse Helms which called for an increase in the Guidelines base offense levels for child pornography offenses. Stabenow article at 6-8. The article states that other than two letters which Senator Helms received from two religious organizations, which he then introduced into the congressional record, the only record of the Senate's intent in passing Amendment 780 was the remarks made by Senator Helms himself.

---

[2] Furthermore, the Stabenow article has not been published in an academic journal, and presumably has not been subject to the rigors of peer review. The Court should not afford any deference to such an untested source of information.

[3] As the Court will note, the government located each of the following problems with the Stabenow article in the *first* ten pages of the article. Stabenow's "deconstruction" of the evidence to support his view continues throughout the article.

Id. at 6-7.  The article then decries the Amendment as "nothing less than a rejection of the empirical, studied approach to child pornography sentencing."  Id. at 8.

This is simply incorrect.  In addition to the two letters mentioned by Stabenow, Senator Helms also introduced into the congressional record a plethora of statistical evidence, scientific research, expert testimony, and findings from earlier Senate hearings on the issue of child pornography drawn from: the National Coalition Against Pornography, the National Obscenity Enforcement Unit, Report of the U.S. Congress Permanent Subcommittee on Investigations on Child Pornography and Pedophilia from 1986, the Southern California Child Exploitation Task Force, the Louisville, Kentucky Exploited and Missing Children Unit, the Badgley Report from 1984 (linking child molestation with juvenile and adult prostitution), the Surgeon General's Workshop on Pornography from 1986, Department of Justice attorneys and staff and academics and writers such as Ann Burgess (a University of Pennsylvania professor with a federal grant to study child pornography), David Duncan (a professor at Southern Illinois University), Judith Reisman (studying pseudo-child pornography), David A. Scott (author of In Pornography: A Human Tragedy), and Don Feder (from the Boston Herald), and a 1986 Senate Report on Child Pornography and Pedophilia. See 137 Cong. Rec. S10322-04.

As such, the record does not support the claim that Amendment 780 was a "morality earmark" designed to appease religious groups, but rather instead demonstrates that the amendment was based on empirical data proving that tougher laws and sentences led to more arrests of child pornography possessors and thus better protection of children.  This example provides yet another reason why the Court should not disregard the child pornography Guidelines under the logic of Kimbrough on the grounds that they are untethered to empirical data and experience.

8

The Stabenow article also cites an August 7, 1991 letter from the Sentencing Commission to Congress, and alleges that the letter argues for a lower base offense level for receipt, possession, and transportation of child pornography. Stabenow article at 5. As a preliminary matter, Stabenow "edits" the August 7, 1991 letter liberally, by starting his cite with a quote from the penultimate paragraph of the letter, and then completing that block quote with a section taken from a *prior* paragraph. Furthermore, Stabenow neglects to mention that the House of Representatives responded on the record with a memorandum refuting many portions of the August 7, 1991 letter, including the portion cited by Stabenow. Indeed, the House of Representatives's memorandum included the following response to the portion of the August 7, 1991 letter cited in the Stabenow article:

> This is very misleading and is largely contradicted by the Commission's own statistics. Under law, when judges depart from the guidelines (that is, when they impose a sentence which is either greater or lesser than the one called for under the guidelines), they must provide their reasons for doing so. According to statistics provided by the Commission to Senator Helms, of these 34 below-guidelines departures only 8 were made because the judge believed that the defendant's conduct was not "serious." Thus, the number of downward departures attributable to a judge's view that receipt, transportation, or advertising for child pornography is not a serious offense is 9 percent, not 38 percent. The Commission fails to mention that their were also 9 above-guidelines departures. In four of those cases, the judge imposed a more severe sentence because of the defendant's extensive criminal history, in two cases because the defendant engaged in the sexual exploitation or abuse of a minor, and in 2 cases for "other" reasons.

137 Cong. Rec. H6736-02.

By the defendant's logic, in order to justify the serious penalties provided for under the child pornography Guidelines, the Sentencing Commission was required to possess reliable research to establish a causal link between a person possessing child pornography and that person personally

abusing a child.  Absent reliable research, so the defendant's argument goes, a within-range sentence must be unreasonable.  Such an argument ignores the legitimacy of legislative process which resulted in the Congress itself increasing the penalties for child pornography offenses.

       3.      The Defendant's Lack of Criminal History Is Not a Ground for Departure

The defendant argues that because he has no criminal history and according to his psychiatrist there is no indicia of pedophilia[4], a non-guidelines sentence is warranted.  Def.'s Sent. Mem. at 17, 21.  This argument is a red herring, intended to focus on crimes that the defendant did not commit, rather than the crime the defendant actually committed.  In fact, such arguments have been rejected by other circuit courts.

In United States v. Stevens, 197 F.3d 1263 (9th Cir. 1999), and United States v. Thompson, 315 F.3d 1071 (9th Cir. 2002), the Ninth Circuit set forth the proper comparison for "heartland" departures in child pornography cases.  Although these cases discuss the heartland in the context of the now-advisory Guidelines, the sentencing analysis remains relevant.  In Stevens, a district court departed downward based on its finding that a defendant convicted of possessing child pornography was outside of the heartland of possession cases, because, among other things, defendant had "only" downloaded child pornography onto his computer, but had not engaged in any additional wrongful conduct.  197 F.3d at 1270.  The Ninth Circuit vacated the sentence, finding that the district court "relied on impermissible factors" in concluding that defendant was not within the heartland of those sentenced for possessing child pornography.  Id. at 1271.  Specifically, the court found that defendant's lack of prior convictions for sexual molestation was irrelevant: "Whether [possession

---

[4] In its initial sentencing memorandum the government articulated its concerns regarding Dr. Segal's report.  See Govt's Sentencing Mem. at 14-15.

10

of child pornography] was the only crime that defendant committed is immaterial to deciding whether his conduct fell within the heartland of the crime of possession." 197 F.3d at 1269.

In Thompson, the district court found that a defendant convicted of child pornography possession and distribution was outside the heartland and downward departed. The district court's decision to depart was based on a number of the same factors cited by defendant here: he had never been involved in criminal conduct; he had no history of sexual abuse of children; he did not pose a risk of engaging in sexual offenses against children; and he showed potential for rehabilitation. 315 F.3d at 1073-74. The Ninth Circuit vacated the sentence, finding that it was error to rely on these factors, "standing alone or cumulatively." 315 F.3d at 1074. The court explained that although "some of the features mentioned by the district court may warrant sentencing at the low end of the designated range, . . . they do not remove [the defendant's] conduct from the heartland." 315 F.3d at 1075. Again, the court concluded that the lack of a past record of sexual abuse was "wholly irrelevant," and did not justify a downward departure because the charged offenses did not include child abuse. 315 F.3d at 1076. Further, the court reasoned that the defendant's criminal history was adequately taken into account by the Guidelines and, therefore, was not a basis for departure.

Other courts have found, post-Booker, that a child pornography defendant should not receive a reduced sentence for not having a past record of sexual abuse. For example, in United States v. Borho, 485 F.3d 904 (6th Cir. 2007), the Sixth Circuit vacated a downward variance for a child pornography defendant, finding that "interactive behavior has little relevance" to the defendant's child pornography offense. 485 F.3d at 911; accord United States v. Perrin, 478 F.3d 672, 677 (5th Cir. 2007) ("The fact that a defendant did not commit, or have the tendency to commit, a more severe crime does not warrant a downward departure for the crime actually committed.").

11

In this case, the defendant's alleged lack of additional crimes is immaterial, and is certainly not a mitigating factor. The defendant is not before the Court to be punished for the sexual assault of a minor; the defendant is before the Court to be punished for his possession of child pornography, which is a serious crime in and of itself.[5]

## III.   CONCLUSION

Wherefore, for the reasons stated above and in the Government's Memorandum in Aid of Sentencing, the government respectfully requests that the Court sentence the defendant to 57 months of incarceration, to be followed by a lifetime of supervised release, with the special conditions provided in the Government's Memorandum in Aid of Sentencing.

Respectfully submitted,

JEFFREY TAYLOR
United States Attorney

**Catherine K. Connelly**

Assistant United States Attorney
Major Crimes Section, Mass. Bar No. 649430
555 4th Street, N.W. #4844
Washington, DC 20001
Phone: 616-3384; Fax: 353-9414

---

[5]  Notwithstanding any disagreement over future danger or deterrence, this Court can and ought take into account the past harms caused by the defendant's conduct. The government finds it telling that one argument that defendant has not addressed (beyond a recitation of his own suffering through his loss of employment, publicity surrounding his conviction, and rift with his son), is that of the need for the punishment imposed to serve the penalogical objective of providing retribution to crime victims. See United States v. Pullen, 89 F.3d 368, 370 (7th Cir. 1996) ("The statute does not use the word 'retribution,' but reference to 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,' has been understood to mean retribution."). The defense goes to great length to debate whether defendant will victimize children in the future, while simply ignoring those children who have already been victimized by defendant.